**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CLAY T. WHITEHEAD, Dr.,
Plaintiff-Appellant,

v.

THE GRAND DUCHY OF LUXEMBOURG;
SOCIETE EUROPEENNE DES SATELLITES,

No. 97-2703

a Luxembourg Corporation and
agency and instrumentality of the
Grand Duchy of Luxembourg;
CANDACE JOHNSON,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-97-520-A)

Argued: June 2, 1998

Decided: September 11, 1998

Before WILKINSON, Chief Judge, and NIEMEYER and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Edward Joseph Meehan, SKADDEN, ARPS, SLATE,
MEAGHER & FLOM, L.L.P., Washington, D.C., for Appellant.

Eugene D. Gulland, COVINGTON & BURLING, Washington, D.C., for Appellee Grand Duchy; Carl Richard Schenker, Jr., O'MELVENY & MYERS, L.L.P., Washington, D.C., for Appellee Societe; Arnold Bruce Podgorsky, WRIGHT & TALISMAN, P.C., Washington, D.C., for Appellee Johnson. **ON BRIEF:** Robert S. Bennett, Rachel Mariner, Joseph L. Barloon, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, L.L.P., Washington, D.C., for Appellant. Brice M. Clagett, Peter D. Trooboff, Matthew S. Yeo, COVINGTON & BURLING, Washington, D.C., for Appellee Grand Duchy; Louis B. Kimmelman, Claudia Ray, Patrick R. Rizzi, Teresa Kwong, O'MELVENY & MYERS, L.L.P., Washington, D.C.; Harvey B. Cohen, R. Scott Caulkins, COHEN, GETTINGS, DUNHAM & DAVIS, P.C., Arlington, Virginia, for Appellee Societe; Saone Baron Crocker, WRIGHT & TALISMAN, P.C., Washington, D.C., for Appellee Johnson.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Dr. Clay Whitehead appeals the dismissal of his complaint against the Grand Duchy of Luxembourg, a sovereign nation; the Societe Europeenne Des Satellites (SES), a Luxembourg corporation; and Candace Johnson, an American citizen who has lived abroad for many years and who serves on SES's board of directors. This complaint alleged violations of international and Virginia law arising from a business venture in Luxembourg. The district court dismissed the suit based on lack of jurisdiction. Whitehead appeals, and we affirm.

I.

Whitehead is the former president of Hughes Communications, Inc. In March 1983 he was approached by Candace Johnson, the Ameri-

can wife of Luxembourg's then-Ambassador to the United States. Johnson sought Whitehead's involvement in developing communications technology in Luxembourg. As a result of this contact, Societe Luxembourgeoise Satellites (SLS) was formed in 1984 and was granted an exclusive franchise by the government of Luxembourg for the country's satellite system. Whitehead created and was chief executive officer of Coronet Societe d'Etudes, a Luxembourg corporation. Coronet had a subfranchise agreement with SLS, under which it financed, launched, maintained, and operated satellites. Coronet paid a franchise fee to SLS and a royalty to the Luxembourg government.

The joint venture aroused fears of American cultural infiltration in and criticism from Eurocentric circles. The government of Luxembourg decided to nationalize Coronet and to cause the formation of SES to take over SLS's exclusive franchise. SES was organized as a private corporation in March 1985. It is two-thirds owned by private investors, with one-third of the shares held by two government-owned banks. SES bought out Whitehead's interest in the joint venture by paying him just over one million dollars and by granting him fifty "Founder's Shares" of SES stock. In return, Whitehead promised not to compete[1] with SES for twenty years, at which time the Founder's shares would expire. The agreement contained a choice-of-law and forum selection clause, which stated that it "shall be subject to Luxembourg law and the district court of Luxembourg shall have jurisdiction in the case of any litigation."[2] SES has prospered, and Whitehead has collected substantial dividends from his Founder's Shares.[3]

_____

[1] Specifically, Whitehead promised to "abstain from assisting directly or indirectly in the preparation, realization, financing or exploitation of any project competing or likely to compete within Europe with the present or future activities of SES[.]"

[2] In a companion settlement agreement executed the same day, the government of Luxembourg agreed to pay $700,000 to reimburse Whitehead for expenses incurred in relation to his past consulting and established the terms upon which Luxembourg could seek consulting work from Whitehead in the future. This agreement contains a choice-of-law and forum selection clause identical to the one in the SES agreement.

[3] Whitehead's share was five percent of SES's net after-tax profits.

In 1993, upon the unanimous vote of its shareholders, SES seized Whitehead's Founder's Shares on the ground that he had violated the agreement not to compete by doing consulting work for and becoming Vice Chairman of Pan American Satellite, a Connecticut-based satellite company that SES contends had operations in Europe. Whitehead attempted to compel the payment of dividends through a summary legal proceeding (called a <u>refere</u>) provided for by Luxembourg law. The court concluded that the <u>refere</u> was an inappropriate vehicle to resolve the claims, and this decision was affirmed on appeal.

Whitehead then filed this suit in district court in Virginia against Luxembourg, SES, and Johnson. He alleged (i) expropriation of property by Luxembourg and SES in violation of international law, (ii) conversion of and a civil conspiracy by all defendants to convert the Founder's Shares, (iii) defamation and interference with prospective business advantage by all defendants, (iv) interference by Luxembourg and Johnson in an advantageous relationship with SES, and (v) breach of contract by SES. The latter four claims were all premised on Virginia statutory or common law.

The district court dismissed the suit. In an initial order, the court held that SES is not an "agency or instrumentality" of Luxembourg, Luxembourg is entitled to sovereign immunity, personal jurisdiction cannot be obtained over SES as a private entity, and all claims premised on the supposed breach of the SES agreement are subject to the exclusive jurisdiction of the Luxembourg courts. The court did hold that the defamation claim against Johnson could proceed. However, on Johnson's motion for reconsideration, the court dismissed this claim because there were no longer any claims subject to original jurisdiction to which the defamation claim could adhere as a supplement. Whitehead appeals.

II.

A.

The amenability to suit, if any, of the government of Luxembourg largely depends on its relationship with SES and, in turn, on SES's amenability to suit in Virginia.

"The Foreign Sovereign Immunities Act [FSIA **4**] `provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.'" Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993) (quoting Argentine Republic v. Amerada Hess Shipping Corp. , 488 U.S. 428, 433 (1989)). If Whitehead could show that SES is an"agency or instrumentality" of Luxembourg's government, 28 U.S.C. § 1603, and that it engaged in activity that falls within one of the exceptions to sovereign immunity enumerated at §§ 1605 and 1607, he could use FSIA to obtain jurisdiction over it. Even then, the juridical identity of SES should ordinarily be respected, and the government would not be automatically liable for SES's acts. First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba, 462 U.S. 611, 623-628 (1983). If jurisdiction over the government cannot be premised on SES's acts, then Whitehead must demonstrate that the acts of the government itself meet an FSIA exception.

If, on the other hand, SES is not an "agency or instrumentality" of the government of Luxembourg, then both subject matter jurisdiction over the controversy (which Whitehead contends is supplied by diversity of citizenship) and personal jurisdiction over SES would be in issue.

Thus, this case raises a host of potentially difficult jurisdictional questions, and even if Whitehead should prevail on all of them, he may have already ceded the opportunity for an American court to hear his case, because his claims remain subject to the choice-of-law and forum selection clauses of the settlement agreement.

We frankly perceive this final ground to be a clear-cut and readily resolved basis for affirmance (with one exception discussed in Part III below), and, in the ordinary course, we may affirm a judgment for any sufficient reason that is apparent on the record. Blum v. Bacon, 457 U.S. 132, 137 n.5 (1982). However, the existence of jurisdictional issues clouds the matter considerably. We turn, therefore, to whether we must address those issues at the threshold.

_____

**4** 28 U.S.C. §§ 1602-1611.

5

B.

The Supreme Court has recently rejected the "doctrine of hypothetical jurisdiction," that is, the practice of several courts of appeals of assuming Article III jurisdiction where the case can be more readily resolved on the merits in favor of the party objecting to jurisdiction. Steel Co. v. Citizens for a Better Environment , 118 S. Ct. 1003 (1998). "`Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" Id. at 1012 (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)). This tenet is more easily stated than unfailingly applied, and the Court acknowledged that its "absolute purity" had been "diluted" by some of the Court's own precedents. 118 S. Ct. at 1014-1016. Moreover, two of the five Justices who joined the relevant parts of the Court's opinion added this caveat: "the Court's opinion should not be read as cataloging an exhaustive list of circumstances under which federal courts may exercise judgment in `reserv[ing] difficult questions of . . . jurisdiction when the case alternatively could be resolved on the merits in favor of the same party.'" Id. at 1020 (O'Connor, J., joined by Kennedy, J., concurring).

In the wake of Steel Co. the en banc Fifth Circuit, by a 9-7 vote, has held that a district court may not address "waivable jurisdictional defects" without first resolving issues of subject matter jurisdiction, at least in cases removed from state courts. Marathon Oil Co. v. A. G. Ruhrgas, 145 F.3d 211 (5th Cir. 1998) (en banc). The court reasoned that subject matter jurisdiction is a fundamental limitation on the federal judiciary's power to act, whereas waivable barriers to that action (e.g. personal jurisdiction) "`represent[ ] a restriction on the judicial power not as a matter of sovereignty, but as a matter of individual liberty.'" Id. at 217 (quoting Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)). It follows, therefore, that a court may reserve difficult questions involving waivable jurisdictional defenses and resolve a case on a less demanding basis, so long as the liberty of the party objecting to jurisdiction is in no way impinged.

Consequently, we must determine just what sort of animal FSIA "jurisdiction" is. "Under the Act, a foreign state is presumptively

6

immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993). However, this "subject-matter" jurisdiction "turn[s] on application of the substantive provisions of the Act." Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 485 (1983). Title 28 U.S.C. § 1330(a) grants district courts jurisdiction "as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under [FSIA] or under any applicable international agreement." Jurisdiction is hence defined by substantive exceptions to immunity.

The very first exception to immunity listed in FSIA is where "the foreign state has waived its immunity either explicitly or by implication . . . [.]" 28 U.S.C. § 1605(a)(1). The character of the limits on our FSIA jurisdiction is thus revealed. If a foreign nation can consent to suit in our courts, then the FSIA's limitation on our jurisdiction must flow from respect for that nation's sovereignty rather than from our own inherent inability to hear the case. Consequently, as long as we do not affront Luxembourg's sovereignty here, we believe that we may resolve the case in any manner we deem best. The forum selection clause is that manner.

C.

The final paragraph of the SES/Whitehead settlement agreement is entitled "PROPER LAW AND JURISDICTION." We quoted it earlier, but it bears repeating: "This Agreement shall be subject to Luxembourg law and the district court of Luxembourg shall have jurisdiction in case of any litigation."

Though surely the most natural reading of this sentence is that all disputes relating to the agreement must be litigated in Luxembourg, some American courts have found similar language to be merely permissive, i.e. all parties agree that litigation in the designated forum would be proper without necessarily precluding litigation elsewhere. See, e.g., Caldas & Sons, Inc. v. Willingham , 17 F.3d 123, 127 (5th Cir. 1994).

This agreement, however, is expressly "subject to Luxembourg law," not the law of the United States or of Virginia.**5** The commercial law of Luxembourg is largely supplied by the treaties and agreements through which many European countries have integrated their economies. Article 17 of the Brussels Convention of 1968, to which Luxembourg was an original signatory, provides in relevant part:

> If the parties, one or more of whom is domiciled in a Contracting State, have agreed that a court or the courts of a Contracting State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have exclusive jurisdiction.

Convention on Jurisdiction and Enforcement of Judgments in Civil and Commercial Matters, September 27, 1968, 29 I.L.M. 1413, 1422 (1990). The defendants provided affidavits from two experts on Luxembourg law, both of whom opined that this provision means what it unambiguously says: a forum selection clause in a contract subject to the Convention designates an exclusive forum. Whitehead countered with the opinion of a third expert, who acknowledged the exclusivity of the selected forum "in principle," but who added the observation that the parties could choose to override it and suggested that the parties' intent "be verified."

Whitehead asserts that he always understood the forum selection clause as requiring either party to answer any suit in Luxembourg, but not limiting them to that forum. Further, he points out that the word "exclusive" was included in an unexecuted July 1984 draft agreement between Coronet and entities represented by the same natural persons (SES had not yet been formed).

_____

**5** For what it is worth, we do note that Virginia adheres to traditional choice-of-law rules. The "nature, validity and interpretation of contracts are governed by the law of the place where made, unless the contrary appears to be the express intention of the parties." Woodson v. Celina Mutual Insurance Co., 211 Va. 423, 177 S.E.2d 610, 613 (1970) (quotation omitted). This contract was made in Luxembourg, and the "express intention" of the parties is by no means "contrary" to governance by Luxembourg law.

We have here a contract clause with a fixed meaning established by a treaty intended to regularize the commercial affairs of hundreds of millions of people. No court, American or European, should lightly dismiss that fixed meaning, else the efforts of the treaty makers to establish stability and predictability in the marketplace would be undermined. While we accept that contracting parties may legally override that meaning, we believe that their intent to do so must be clear and must be mutual. Whitehead's unilateral expectation[6] and proposed language in an unexecuted draft agreement from a different course of negotiations is hardly enough. The forum selection clause is exclusive.

Every cause of action pled in the complaint, with the single exception discussed in Part III, is premised on the illegality of the seizure of the Founder's Shares and the consequent withholding of dividends. There is a single forum to litigate the validity of this premise: "the district court of Luxembourg." The district court therefore rightly dismissed those claims.

III.

The district court held that a single part of the defamation claim was not subject to the forum selection clause, i.e. Johnson's alleged public disparagement of Whitehead's business abilities and of his contributions to SES's success, which disparagement was allegedly made at the behest of SES and Luxembourg and was reported in at least one European magazine. The defendants do not challenge this holding, so we must examine whether any or all of the defendants can be subjected to suit in Virginia upon this claim.

_____

[6] According to a defense expert on Luxembourg law, resort to the "common intention" of the parties will be made only if a contract clause is ambiguous; even then "the judge will refer to the common intention of the parties and not to the unexpressed internal desire of only one of the parties. A purely internal intention of one of the parties will not be taken into consideration."

A.

As to the government of Luxembourg and SES as its purported "agency or instrumentality," the answer is easy. FSIA specifically forbids American courts from hearing "any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[ ]" against a foreign sovereign. 28 U.S.C. § 1605(a)(5)(B).

B.

As for the claim against Johnson, Whitehead does not challenge the district court's ruling that the supplemental jurisdiction ought not be retained in the absence of original jurisdiction. Rather, he asserts that diversity of citizenship was a proper basis for original jurisdiction. We disagree.

Though diversity jurisdiction extends to suits between United States citizens domiciled in different states and between citizens so domiciled and aliens, it does not include United States citizens domiciled abroad, for they are neither aliens nor citizens of any state. "In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989). The presence of a single such expatriate party destroys diversity jurisdiction for the entire action. Id. at 829.

According to her unrebutted sworn declaration, Johnson is a United States citizen. There is no evidence that she is domiciled in the United States, however. Her husband is currently Luxembourg's ambassador to Russia, and she has not lived in the United States for fourteen years. Though the district court found that she had "minimum contacts" with Virginia (e.g. she owns property there), such contacts fall well short of constituting a domicile. Indeed, Whitehead's complaint alleges that Johnson is a resident of Russia, and his brief endorses her disclaimers of Virginia domicile (such a domicile would also destroy diversity because Whitehead, too, is a Virginia resident). Brief of Appellant, at 38.

10

The nondiversity of Johnson dooms the claim against SES as private entity, because, as we noted, there must be complete diversity between all plaintiffs and all defendants. Hence, we have no need to address whether SES could be subjected to personal jurisdiction in Virginia on the defamation claim.

The judgment of the district court is affirmed. **7**

AFFIRMED

_____

**7** The district court also denied Whitehead's motion to compel broad discovery touching primarily on the FSIA issues. We review this decision for abuse of discretion, and we find no abuse. An important aspect of foreign sovereign immunity would be lost if a foreign state is subjected to burdensome discovery without a prima facie showing of jurisdiction. See Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1991). Under the narrower grounds on which we have rested affirmance, the relevance of the requested discovery would be even more questionable.

11